## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LINDA SOLOMON,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No.  07-1590 (JDB) |
| **THOMAS J. VILSACK, U.S. Secretary of Agriculture,**[1] | |
| **Defendant.** | |

### MEMORANDUM OPINION

Plaintiff Linda Solomon, a former employee of the United States Department of Agriculture ("USDA"), brings this employment discrimination and retaliation action against defendant Thomas J. Vilsack in his official capacity as the Secretary of Agriculture ("the Secretary").  Solomon seeks relief under three statutes:  the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq.  Now before the Court is the Secretary's motion for summary judgment.  The primary issue presented is whether Solomon's application for and receipt of federal employees' retirement disability benefits precludes her Rehabilitation Act and Title VII claims.  The Court concludes that those claims are precluded.  Hence, upon careful consideration of the motion and the parties' memoranda, the applicable law, and the entire record, the Secretary's motion will be granted.

---

[1] Former U.S. Secretary of Agriculture Mike Johanns was named as the original defendant in this case.  Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes his successor, Secretary Thomas J. Vilsack, as the new defendant.

## BACKGROUND

Solomon began working as a budget analyst at the USDA in 1997.  See Def.'s SOF at ¶ 63 & Pl.'s SOF at 3.[2]  She has a long history of depression and has been treated by numerous mental health professionals, including Dr. Dennis Cozzens, a psychiatrist.  See Def.'s SOF at ¶¶ 1-9 & Pl.'s SOF at 1.  Solomon's depression intensified in late 2003 because of various personal hardships she experienced at that time.  See Def.'s SOF at ¶¶ 10-32 & Pl.'s SOF at 1-2.  Her mental health in late 2003 into 2004 "was often unpredictable" and she had "intermittent and sporadic" problems sleeping, concentrating, and focusing.  Pl.'s SOF at 2.  She began suffering from "panic disorder" and "agoraphobia,"[3] and Dr. Cozzens believed that Solomon had entered a downward cycle by May 2004.  See Def.'s SOF at ¶¶ 39-41 & Pl.'s SOF at 3.  ████████

████████████████████████████████████████████████████████  See Def.'s SOF at ¶¶ 42-46 & Pl.'s SOF at 3.  According to Dr. Cozzens, Solomon's condition remained poor in June 2004, and Solomon describes herself as having been in "crisis" in July 2004.  See Def.'s SOF at ¶¶ 47, 53 & Pl.'s SOF at 3.  Her condition did not improve in August 2004.  See Def.'s SOF at ¶¶ 55-58 & Pl.'s SOF at 3.

As her depression worsened, Solomon began missing time at work.  In the first ten weeks of 2004, she used more than 110 hours of leave, including 50 hours of leave without pay.  See Def.'s SOF at ¶ 72 & Pl.'s SOF at 5.  By early March 2004, Solomon began communicating with her supervisors about her condition, and on March 24, 2004, Dr. Cozzens confirmed to USDA

---

[2] Pursuant to Local Rule 7(h), each party submitted a statement of facts as part of their briefing on the Secretary's motion for summary judgment.

[3] Agoraphobia is an anxiety disorder characterized by the fear of being around other people.

-2-

that Solomon was under his care. <u>See</u> Def.'s SOF at ¶¶ 73-74 & Pl.'s SOF at 5.  Dr. Cozzens

requested a "flexible work schedule" for Solomon -- a schedule that would permit her "to

determine whether she was able to work on a particular day and to work at home when

necessary."[4]  <u>See</u> Def.'s SOF at ¶ 74 & Pl.'s SOF at 5.  Solomon also requested a larger cubicle.

<u>See</u> Def.'s SOF at ¶ 79 n.1 & Pl.'s SOF at 6.  Solomon and her supervisor communicated about

these requests in April 2004, but Solomon stopped going to work on April 23, 2004.  <u>See</u> Def.'s

SOF at ¶¶ 84-86 & Pl.'s SOF at 6.

Dr. Cozzens sent several letters to the USDA about Solomon after she stopped working.

On May 10, 2004, he wrote that Solomon's condition had "prevented her from attending work."

<u>See</u> Def.'s SOF at ¶ 88 & Pl.'s SOF at 6.  Dr. Cozzens wrote on June 2, 2004 to inform the USDA

about Solomon's ████████ and reported that she remained unable to work, although he

estimated that she would be able to return to work in mid-July.  <u>See</u> Def.'s SOF at ¶ 91 & Pl.'s

SOF at 6.  At the same time, Solomon continued to communicate with her supervisors.  On May

26, 2004, she asked permission to telecommute part-time.  <u>See</u> Def.'s SOF at ¶ 94 & Pl.'s SOF at

6-7.  And in early July 2004, Solomon applied to enter the USDA's Voluntary Leave Transfer

Program.  <u>See</u> Def.'s SOF at ¶ 96 & Pl.'s SOF at 7.

But by mid-July, Solomon wrote to Dr. Cozzens that she had "decided to go for[ward]

with the permanent disability package."  <u>See</u> Def.'s SOF at ¶ 102 (quoting Def. Mem. Ex. 19) &

Pl.'s SOF at 7.  Solomon was referring to retirement disability benefits available under the

Federal Employees Retirement System ("FERS") program.  Solomon (and Dr. Cozzens)

---

[4] Solomon already worked a flexible schedule that permitted her to work four days each
week.  Deposition of Linda Solomon at 56, 101.

completed the documentation required for FERS disability benefits and submitted the forms on

August 30, 2004.  See Def.'s Mem. Ex. 2.  The application queried whether the "agency [has]

been able to grant your request [for accommodations]," to which Solomon responded "No."  Id.

In an attachment to the application, Solomon wrote that "[s]ince April 2004, I have been unable

to work because my medical condition remains in crisis after ███████████ and continued

treatment.  My illnesses have severely affected my attendance at work since May 2003, [and]

have interfered with my ability to perform the duties of my position."  Id.  Dr. Cozzens also

submitted a letter in support of Solomon's application for FERS benefits, opining that "[i]t has

become clear that disability retirement is the only viable option in this case."  Def.'s Mem. Ex.

25.

Solomon's application for FERS disability benefits was approved on December 16, 2004,

see Def.'s Mem. Ex. 3, and she began receiving benefits (retroactive to the date of application) in

January 2005, see Solomon Dep. at 43:18-44:8.  Beginning in January 2005, Solomon received

approximately $1,400 per month in FERS disability benefits.[5]  Id. at 46:3-19.  Since then, she has

continued to represent that she cannot return to work because of her disability.  See Def.'s Mem.

Ex. 18 at 26 (letter of Dr. Cozzens stating that "Ms. Solomon is still disabled . . . and cannot

return to her former employment because of this disability") (dated Dec. 5, 2007).  On September

7, 2007, Solomon filed the pending complaint.  The Secretary filed a motion for summary

judgment on February 4, 2009.  Briefing was completed on August 6, 2009, and the motion is

now ripe for resolution.

---

[5] Solomon also received approximately $1,900 per month in benefits through the Social
Security Disability Insurance ("SSDI") program.  See Solomon Dep. at 46:3-22.

## STANDARD

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323. In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## ANALYSIS

### I.    Rehabilitation Act Claim

The Court's analysis of Solomon's Rehabilitation Act claim begins and ends with the

resolution of a threshold issue: whether a plaintiff who applies for and receives FERS disability benefits may pursue a claim for failure to accommodate a disability. Because, as discussed below, FERS disability benefits are only available for individuals whose disabilities cannot be accommodated, the Court concludes that the recipient of such benefits is precluded from pursuing relief under the Rehabilitation Act based on a claim that failure to accommodate a disability was discriminatory.

FERS disability benefits are available to federal employees who have completed eighteen months of civilian service and who are "unable, because of disease or injury, to render useful and efficient service." See 5 U.S.C. § 8451(a)(1). The Office of Personnel Management ("OPM"), the agency responsible for administering FERS, has promulgated implementing regulations providing that FERS disability benefits are only available if "[a]ccommodation of the disabling medical condition in the position held [is] unreasonable." 5 C.F.R. § 844.103(a)(4).

These requirements for eligibility distinguish FERS disability benefits from most other federal disability benefits programs. The SSDI program, for example, "does not take the possibility of 'reasonable accommodation' into account." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 803 (1999) (emphasis in original). Hence, there may be "situations in which an SSDI claim and an [Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.] claim can comfortably exist side by side." Id. The Supreme Court therefore concluded in Cleveland that receipt of SSDI benefits does not automatically preclude plaintiffs from claiming that they should have been provided reasonable accommodations under the Rehabilitation Act or the ADA. 526 U.S. at 803; see also Swanks v. WMATA, 116 F.3d 582, 586 (D.C. Cir. 1997) (same).

Courts that have considered whether the receipt of FERS disability benefits bars lawsuits based on a failure to accommodate have adopted two approaches.  One approach is that taken in Arneson v. Heckler, 879 F.2d 393 (8th Cir. 1989), which pre-dates the Supreme Court's opinion in Cleveland.  In Arneson, the court recognized that receipt of retirement disability benefits[6] would bar a Rehabilitation Act claim unless the plaintiff could show that his application for retirement benefits was involuntary.  Id. at 396.  This focus on voluntariness has been limited, for the most part, to the Eighth Circuit, although one other circuit court has cited to Arneson approvingly in an unpublished table opinion.  See Emerson v. Widnall, 104 F.3d 367 at *3 (10th Cir. Dec. 24, 1996).

The second approach, which has arisen in the wake of Cleveland,[7] has been adopted by other judges of this Court.  In Chinchillo v. Powell, 236 F. Supp. 2d 18, 27 (D.D.C. 2003), the court observed that "[a]n employee cannot plausibly claim that he is unable to work at all to obtain FERS benefits but able to work with an accommodation in connection with a Rehabilitation Act claim."  Having examined the Supreme Court's opinion in Cleveland, the court in Chinchillo reasoned that "[a] plaintiff filing both a FERS claim for benefits and a Rehabilitation Act claim of discrimination cannot reconcile the inherent conflict, as might a plaintiff who sought SSDI benefits along with relief based on a claim of discrimination."  Id. The court then granted the defendant's summary judgment motion "[b]ased on plaintiff's

---

[6] The plaintiff in Arneson applied for benefits under the Civil Service Retirement System ("CSRS"), the federal employees' retirement system that preceded FERS.  CSRS, like FERS, is only available if "[t]he employing agency [is] unable to accommodate the disabling medical condition in the position held or in an existing vacant position."  5 C.F.R. § 831.1203(a)(4).

[7] See Faconti v. Potter, 242 Fed. Appx. 775, 776 (2d Cir. 2007); Wallace v. Soc. Sec. Admin., 108 F. Supp. 2d 716, 719 (S.D. Tex. 2000).

"appear to negate an essential element of [her] ADA case." Id. at 806. The D.C. Circuit reached the same conclusion in Swanks, which also focused on the potential mutual exclusivity of SSDI benefits and reasonable accommodation claims. See Swanks, 116 F.3d at 586 ("[I]t is thus clear that [SSDI] disability determinations take no account of reasonable accommodation -- the critical ADA issue."). But OPM does take the possibility of reasonable accommodation into account in determining an applicant's eligibility for FERS disability benefits. An applicant is only eligible if "[a]ccommodation of the disabling medical condition in the position held [is] unreasonable." 5 C.F.R. § 844.103(a)(4). Hence, receipt of FERS disability benefits depends on the unavailability of a reasonable accommodation and cannot be reconciled with a claim that a plaintiff was entitled to but not provided with a reasonable accommodation. See Holmes-Martin, 569 F. Supp. 2d at 196; Chinchillo, 236 F. Supp. 2d at 27.

Applying these principles here, the Court will grant summary judgment in favor of the Secretary on Solomon's Rehabilitation Act claims. Solomon applied for FERS disability benefits on August 30, 2004. See Def.'s Mem. Ex. 2; see also Solomon Dep. at 38:10-25. The application queried whether the "agency [has] been able to grant your request [for accommodations]," to which Solomon responded "No." Def.'s Mem. Ex. 2. As part of the application, Solomon represented that "[s]ince April 2004, I have been unable to work because my medical condition remains in crisis ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. My illnesses have severely affected my attendance at work since May 2003, [and] have interfered with my ability to perform the duties of my position." Id. Dr. Cozzens's letter in support of Solomon's application stated that "[i]t has become clear that disability retirement is the only viable option in this case." Def.'s Mem. Ex. 25. Her application was approved on December 16,

application for FERS benefits." Id.

These same principles animated the decision in Holmes-Martin v. Leavitt, 569 F. Supp. 2d 184 (D.D.C. 2008).[8] After discussing the tension between CSRS disability benefits and ADA reasonable accommodation claims, the court distinguished Cleveland by pointing out that the same tension did not exist between SSDI benefits and reasonable accommodation claims. Id. at 194-95. The court then surveyed the sparse case law on this issue, including Arneson. Id. at 195. The court in Holmes-Martin elected not to follow the Arneson "voluntariness" approach because, after Cleveland, "the voluntariness of the retirement is secondary to the preclusive effect of obtaining disability benefits under the CSRS." Id. In Cleveland, the Supreme Court did "not consider the voluntariness of retirement; instead the Court analyze[d] whether the SSA and the ADA are orthogonal avenues of relief." Id. at 196 (citing Cleveland, 526 U.S. at 802-05). The Holmes-Martin court then held that receipt of CSRS disability benefits "precludes the plaintiff from bringing a Rehabilitation Act claim." Id.

This Court will follow the approach outlined in Chinchillo and Holmes-Martin. As described in Holmes-Martin, the Cleveland Court was concerned with the potential mutual exclusivity of two remedies. Cleveland concluded that the receipt of SSDI disability benefits and a reasonable accommodation claim are not mutually exclusive because the Social Security Administration "does not take the possibility of 'reasonable accommodation' into account" in granting (or denying) SSDI benefits. Cleveland, 526 U.S. at 803 (emphasis in original). The Supreme Court noted that its conclusion might be otherwise if a plaintiff made a "sworn assertion in an application for disability benefits that she is . . . 'unable to work'" because that would

_____

[8] Holmes-Martin, like Arneson, dealt with CSRS benefits rather than FERS benefits.

2004, <u>see</u> Def.'s Mem. Ex. 3, and Solomon began receiving benefits (retroactive to the date of application) in January 2005, <u>see</u> Solomon Dep. at 43:18-44:8. Beginning in January 2005, then, Solomon received approximately $1,400 per month in FERS disability benefits. <u>Id.</u> at 46:3-19. And Solomon has continued to represent to OPM that she cannot return to work because of her disability. <u>See</u> Def.'s Mem. Ex. 18 at 26 (letter of Dr. Cozzens stating that "Ms. Solomon is still disabled . . . and cannot return to her former employment because of this disability") (dated Dec. 5, 2007). Solomon's receipt of FERS disability benefits, then, which she received upon a representation that she was "unable to work" and which she is only eligible for if she cannot be reasonably accommodated, cannot be reconciled with her claim that the Secretary was required to accommodate her under the Rehabilitation Act. The claims are mutually exclusive, and receipt of the former precludes the latter.

## II.   Retaliation Claim under Title VII

"'In order to establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two.'" <u>Morgan v. Fed. Home Loan Mortgage Corp.</u>, 328 F.3d 647, 651 (D.C. Cir. 2003) (quoting <u>Mitchell v. Baldrige</u>, 759 F.2d 80, 86 (D.C. Cir. 1985)). For the second element, an action is adverse if a plaintiff can show "that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006) (quoting <u>Rochon v. Gonzales</u>, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (some quotations omitted). Solomon contends that the Secretary's denial of her request for accommodation

qualifies as an adverse action.  See Compl. ¶ 27, Opp'n at 44.

But Solomon's Title VII retaliation claim fails for the same reason her Rehabilitation Act claim does:  her request for accommodation cannot be squared with her application for and receipt of FERS disability benefits.  A failure to grant Solomon requested accommodations cannot be "adverse" if she could not reasonably have been accommodated.  And, as discussed above, Solomon is only eligible for FERS disability benefits because "[a]ccommodation of the disabling medical condition in the position held [is] unreasonable."  See 5 C.F.R. § 844.103(a)(4).  Accordingly, summary judgment will be granted in favor of the Secretary on Solomon's retaliation claim as well.

## III.   ADEA Claim

Under the ADEA, Solomon must show that she suffered an adverse employment action because of her age.  See Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008). According to the Secretary, Solomon's only evidence that certain actions were (or were not) taken because of her age is her own speculation.  Def.'s Mem. at 36.  When Solomon was asked at her deposition why she believed that requests for accommodation had been denied because of her age, she responded that "I was 50, I don't dye my hair, and you can get a younger person to do the work that I was doing, probably at a lower grade.  That's money."  Solomon Dep. at 220:1-8.  In her opposition brief, Solomon does not point to any other evidence to show that allegedly adverse actions were (or were not) taken because of her age.  Rather, she contends that a reasonable fact-finder could infer discrimination from the totality of the record.  See Pl.'s Opp'n at 45-46.

At this stage of proceedings, however, a plaintiff must point to "evidence . . . probative of establishing discriminatory animus."  See Holcomb v. Powell, 433 F.3d 889, 901 (D.C. Cir.

2006).  "The possibility that a jury might speculate in the plaintiff's favor is insufficient to defeat summary judgment."  See Haynes v. Williams, 392 F.3d 478, 485 (D.C. Cir. 2004) (citing Rogers Corp. v. EPA, 275 F.3d 1096, 1103 (D.C. Cir. 2002)).  Here, Solomon has pointed to no evidence establishing discrimination because of her age, other than her own bald speculation, and hence summary judgment will be granted in favor of the Secretary on Solomon's ADEA claim.

## CONCLUSION

Summary judgment will be granted in favor of the Secretary on all counts.  Solomon's Rehabilitation Act claim is precluded by her application for and receipt of FERS disability benefits, which she is only eligible for because her disability cannot reasonably be accommodated.  Her Title VII retaliation claim fails for the same reason.  Finally, summary judgment will be granted against Solomon on her claim under the ADEA because she has provided no evidence to establish that any actions were taken because of her age.  A separate order accompanies this memorandum opinion.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Date:   August 31, 2009